# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:19-CV-00024-GCM

| | |
|---|---|
| DAVID OPPENHEIMER,<br><br>    Plaintiff,<br><br>v.<br><br>THE ACL LLC,<br>WILLIAM STACEY MOORE,<br><br>    Defendants. | **ORDER** |

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Summary Judgment [ECF Doc. 13], which was filed on March 23, 2020. Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment [ECF Doc. 16] was filed on May 6, 2020 and Plaintiff filed a Reply on May 13, 2020. This Motion, now being fully briefed, is ripe for consideration and the Court finds the following.

## I. BACKGROUND

This copyright infringement case was brought by Plaintiff David Oppenheimer on January 17, 2019 against Defendants William Stacey Moore and the ACL LLC ("ACL"). ECF Doc. 1. The Copyrighted Work is a photograph framing the event center lobby of Harrah's Cherokee Casino Resort ("Harrah's"). ECF Doc. 1-1. Defendant ACL operates the website "iplaycornhole.com" and advertised an event to be held at Harrah's, the "2016 Championship of Bags," on iplaycornhole.com. ECF Doc. 14-2 at 12. Without having licensed to use, obtained authorization, or in any way compensated Plaintiff for its use of the Copyrighted Work, Defendant ACL used the Copyrighted Work on its website to promote the 2016 Championship of Bags. ECF Doc. 14-2 at 2, 12; ECF Doc. 1-3. Plaintiff attests that his copyrighted photographs display his

copyright management information ("CMI") when first published, and the Copyrighted Work displayed his CMI when first published. ECF Doc. 1, ¶ 10; ECF Doc. 14-2 at 2. Because Defendants were on notice or should have been on notice for copyrights, Plaintiff sued Defendants for violating federal copyright law. ECF Doc. 1, ¶¶ 1, 10. Any other relevant facts are set forth in the discussion section below.

## II. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and "the materiality determination rests on the substantive law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (alteration in original).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met the initial burden, the burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson*, 477 U.S. at 256. In considering a motion for summary judgment, a Court views all evidence in the light most favorable to the nonmoving party. *Id.* at 255.

Where a nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d)(1)–(3). Additionally, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). It is with these standards in mind that the Court considers the present matter.

## III. DISCUSSION

Plaintiff seeks only partial summary judgment, moving for summary judgment as to: (1) Defendants' liability for direct copyright infringement and (2) five of Defendants' affirmative defenses, including fair use, unclean hands, de minimis use, implied license, and failure to mitigate damages. The Court addresses each argument in turn below.

### a. Defendants' Liability for Direct Copyright Infringement

Plaintiff maintains there is no dispute of material fact and Plaintiff is entitled to judgment as a matter of law as to Plaintiff's claim for direct copyright infringement. A copyright holder is granted "'exclusive rights' to use and to authorize the use of his work in five qualified ways, including reproduction of the copyrighted work in copies." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984); 17 U.S.C. § 106 (2018). Whoever violates an exclusive right of the copyright holder infringes upon the copyright. 17 U.S.C. § 501(a); *Sony Corp. of Am*, 464 U.S. at 433. To allege copyright infringement, a plaintiff must prove: (1) valid copyright ownership and (2) copying of the original elements of the copyright. *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004).

Plaintiff sets forth that he holds a certificate of copyright registration for the Copyrighted Work issued by the United States Copyright Office. ECF Doc. 1-2. A certificate of registration "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Thus, Defendants have the burden to overcome the presumption that the copyrights are valid. *See Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 429 (4th Cir. 2010). Defendants make no attempt to dispute the validity of the copyrights for the Copyrighted Work. Therefore, Plaintiff has succeeded in establishing valid copyright ownership exists.

Next, Plaintiff argues there is no contrary evidence to that establishing Defendants directly copied the Copyrighted Work and published it on the internet without license or authorization. ECF Doc. 1-3 (showing the website post where the Copyrighted Work was copied); ECF Doc. 14-2 at 9, 12 (documenting that Defendant Moore admitted the Copyrighted Work was displayed on iplaycornhole.com); ECF Doc. 14-2 at 11 (explaining that Defendant Moore was responsible for managing iplaycornhole.com and showing that Defendant Moore admitted Defendant ACL ran the website where Plaintiff's photograph was used); ECF Doc. 14-2 at 15, 18 (explaining in Defendants' Response to Plaintiff's First Interrogatories that, although Defendants do not recall whether the Copyrighted Work was acquired from Harrah's or a Google search, the Copyrighted Work was posted on Defendant ACL's website on or around November 18, 2015 through December 2016). Again, Defendants do not seek to dispute the validity of this evidence, and by failing to dispute these facts, they have admitted that the Copyrighted Work was copied.

Nevertheless, Defendants argue there could be an issue of material fact as to whether the photograph was provided to Defendants by an act of a sovereign state, the Eastern Band of Cherokee Indians and its tribal entities ("the Tribe"), which could bar Plaintiff's claims. The act

of state doctrine is applicable where "the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990). The issue only arises "when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign. When that question is not in the case, neither is the act of state doctrine." *Id.* at 406 (emphasis in original). The purpose behind the doctrine is that, were the United States to reexamine and possibly condemn the acts of another sovereign state, it could "imperil the amicable relations between governments and vex the peace of nations." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 417–18 (1964) (quoting *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 303–04 (1918)). In considering whether the doctrine should be invoked, the policies underlying the act of state doctrine may be considered. *W.S. Kirkpatrick & Co.*, 493 U.S. at 409.

Defendants urge the Court to conclude that because there may be an issue of fact as to whether the Tribe or its entities acted officially by supplying Defendants with the photograph to be used in marketing the event at Harrah's, summary judgment is improper. According to Defendants, if the Tribe provided the photo to Defendants, granting Plaintiff summary judgment would be an indirect attack on the Tribe's sovereignty. The Court disagrees. To say that the act of state doctrine applies is to argue that the outcome of this case turns on whether the Tribe validly gave the photo to Defendants in its official capacity and, thereby, made it so that Defendants' copying and posting of the Copyrighted Work was not infringement. This theory is far too attenuated where Defendants, who are not alleged to be part of the Tribe, took the Copyrighted Work and illegally copied it onto their website. Such a conclusion is especially true given that Defendants' theory in no way serves to promote the rationale behind the act of state doctrine.

There is no risk of imperiling amicable relationships between the government and the Tribe. The Court finds that the act of state doctrine should not be invoked here, and Defendants have offered no evidence to dispute the validity of the copyrights or to dispute their acts in copying the Copyrighted Work. Therefore, there is no genuine dispute of material fact as to the direct copyright infringement that occurred when Defendants copied and published the Copyrighted Work on their website.[1]

### b. Defendant Moore's Liability

While Plaintiff has clearly established direct copyright infringement here on the part of Defendant ACL, it remains for the Court to determine whether Defendant Moore is individually liable for the infringement. Defendants maintain that Defendant Moore is not liable for direct copyright infringement because Plaintiff has not established facts or law piercing the corporate veil and, under North Carolina law, a person is not liable for the obligations of an LLC solely by virtue "of being an interest owner, manager, or other company official." N.C. Gen. Stat. § 57D-3-30 (2020). Yet, Congress has established that it is illegal to reproduce a copyrighted work in copies or to distribute copies of the copyrighted work. 17 U.S.C. § 106. "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." *Id.* § 501(a). A direct infringer is "characterized as one who 'trespasses into [the copyright owner's] exclusive

---

[1] Perhaps of some note is why the Court even considered this defense in its analysis, given that Plaintiff argues Defendants waived the defense. Plaintiff first maintains that Defendants waived a defense of sovereign immunity and cannot raise the defense now. *See, e.g.*, ECF Doc. 17 at 3 (referring to Defendants' act of state defense as "Defendants' sovereign immunity defense"). "The act of state doctrine, however, although it shares with the immunity doctrine a respect for sovereign states, concerns the limits for determining the validity of an otherwise applicable rule of law." *Sabbatino*, 376 U.S. at 438. Thus, these two theories are distinct and should not be conflated. Plaintiff also argues that Defendants waived the act of state defense by failing to properly move to amend their answer to include the affirmative defense. ECF Doc. 17 at 4. But a waiver "should not be effective unless the failure to plead resulted in unfair surprise or prejudice." *In re FirstPay, Inc.*, 391 F. App'x 259, 270 (4th Cir. 2010) (quoting *S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co.*, 353 F.3d 367, 373 (4th Cir. 2003)) (finding that an affirmative defense was not waived even when it was raised for the first time during summary judgment proceedings). Plaintiff had seven days to file a reply to Defendants' Response and could have sought additional time with a motion showing good cause for an extension. That Plaintiff did not request additional time to reply or raise unfair surprise or prejudice in his Reply indicates there is no reason to invoke a waiver of the affirmative defense here.

domain' established in § 106." *CoStar Grp., Inc.*, 373 F.3d at 549 (quoting *Sony*, 464 U.S. at 433)). Thus, simply because a limited liability company was found directly liable for copyright infringement does not prevent an individual who actually participated in the copyright violation from being personally liable for direct copyright infringement. *See Universal Furniture Int'l, Inc. v. Frankel*, 835 F. Supp. 2d 35, 49 (M.D.N.C. 2011), *aff'd*, 538 F. App'x 267 (4th Cir. 2013).

Regardless of his role with Defendant ACL, Defendant Moore is personally liable for direct copyright infringement because he violated Plaintiff's exclusive copyrights based on the undisputed facts set forth in Plaintiff's Motion. Defendant Moore verified in deposition that he is "the sole owner of the ACL, LLC, which operates iplaycornhole.com." ECF Doc. 14-2 at 10. He also admitted the Copyrighted Work was published on iplaycornhole.com and that he was the individual who managed the website when it was published. *Id.* at 11. Defendants do not dispute these facts. Even if Defendant Moore was acting on behalf of Defendant ACL when he copied and pasted the Copyrighted Work to Defendant ACL's website, he is liable for direct copyright infringement because he personally infringed on Plaintiff's exclusive copyrights.

### c. Defendants' Fair Use and Unclean Hands Affirmative Defenses

Plaintiff moves for summary judgment on five of Defendants' affirmative defenses, but the only affirmative defenses Defendants argue in their Response are those of fair use and unclean hands, the latter of which is apparently argued under the misuse of copyright doctrine. Defendants' predicate for these two defenses is that Plaintiff is an alleged copyright troll. ECF Doc. 16 at 12–13. Defendants argue that Plaintiff has brought hundreds of infringement suits nationwide and brings copyright infringement claims against defendants after paying for a monthly service that scours the web looking for infringing uses of his copyrighted photos. *Id.* at 12. Apparently, the only supporting evidence Defendants have provided for this theory includes a list of lawsuits

Defendants believe were filed by Plaintiff and a list of copyrights Defendants believe the Plaintiff has registered with the USPTO, both provided in response to Plaintiff's request for production of documents supporting Defendants' affirmative defenses. ECF Doc. 14-2 at 29. Notably, Defendants claim additional evidence is yet to be uncovered in discovery, but they believe it will prove that Plaintiff's income is derived from photography by way of litigation or threats of litigation over copyright infringement. ECF Doc. 16 at 12–13. However, discovery has long-since closed and Defendants have not filed a motion to compel discovery, supplemented their response to Plaintiff's request for production, or supplemented their Response to this Motion. Yet, Plaintiff has not offered evidence of the profits he earns from his copyrighted works either, beyond claiming that he is a professional photographer who makes a living from creating photographs and licensing their use for fees. ECF Doc. 14-2 at 1. Under this backdrop, the Court will look to Defendants' affirmative defenses for fair use and unclean hands.

### 1. Fair Use

Turning first to the fair use doctrine, Congress has placed certain limitations on the exclusive rights of copyright owners, one of which is the fair use limitation. 17 U.S.C. § 107. To determine whether the use of a copyrighted work is "fair," courts consider the following factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.* For the first factor, a commercial purpose for the use of a copyrighted work will likely weigh against fair use, while a use for criticism, comment, news reporting, *et cetera* may favor fair use, depending on whether the goal of the use was to add something new to the work. *A.V. ex rel.*

*Vanderhye v. iParadigms, LLC.*, 562 F.3d 630, 638 (4th Cir. 2009). As to the second factor, a use is less likely considered fair when the nature of the work is a creative product, rather than a factual work. *Id.* at 640. For the third factor, as the amount of the copyright work used increases, so decreases the likelihood of finding the use fair. *Id.* at 642. Lastly, the fourth factor is considered the "single most important element of fair use," and looks to "whether the secondary use *usurps the market of the original work.*" *Id.* at 643 (quoting *NXIVM Corp. v. The Ross Inst.*, 364 F.3d 471, 482 (2d Cir. 2004)) (emphasis in original). Ultimately, the inquiry into whether a use is "fair" must be decided on the facts of each case. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985).

Applying these factors to the facts of this case, the purpose and character of Defendants' use appear to be of a commercial nature, where Defendants have not argued or presented evidence contrary to them having used the work to promote awareness about their cornhole championship. ECF Doc. 1-3; ECF Doc. 14-2 at 12. Additionally, while the photograph in question is simply one of the Harrah's lobby, it required some artistic element and creativity to decide the perspective to take, the placement and orientation of the camera, the settings to use, and the timing of the photograph. *See* U.S. Copyright Office, *Circular 42*: *Copyright Registration of Photographs*, https://www.copyright.gov/circs/ (last visited Nov. 19, 2020) (classifying photographs as "visual art works" and explaining why they are classified as such); ECF Doc. 14-2 at 2 (attesting to the care taken when creating the Copyrighted Work). Further, Defendants proceeded to copy the entire work to the website iplaycornhole.com. ECF Doc. 1-3. Nevertheless, when turning to the final factor, it seems that Plaintiff has failed to establish sufficient undisputed facts to support the effect Defendants' use had upon the potential market for or value of the copyrighted work. While Plaintiff argues he is a professional photographer and his income is derived from licensing his

works, Defendants argue his income is derived from copyright infringement cases. Without more facts, perhaps those attesting to the value of the photograph, the expected profit from the photograph, or even the value or expected profits derived from similar photographs, the Court cannot make a determination as to the fourth factor of the fair use doctrine. Plaintiff has not established sufficient facts that the secondary use usurped the market for the original work. While the Court acknowledges that these factors are to be examined as a whole and no single factor is determinative, the fourth factor is undoubtedly the most important factor. A reasonable jury could find that Defendants' use of the work had minimal effect upon the potential market for or value of the copyrighted work and this would be key to analysis of the substantive law. Therefore, summary judgment is not appropriate for this affirmative defense.

### 2. Unclean Hands

Plaintiff argues he is entitled to summary judgment upon Defendants' unclean hands affirmative defense as well, while Defendants seemingly argue that the misuse of copyright doctrine applies to prevent summary judgment on this matter. The Fourth Circuit has established that misuse of copyright is a valid affirmative defense where the use of a copyright is contrary to the public policy upon which copyrights are granted. *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 977 (4th Cir. 1990). Typically, the defense applies when seeking to avoid anti-competitive behavior, but it can also apply to other scenarios where a copyright owner attempts to extend the copyrights beyond their intended reach. *Id.*; *see also Religious Tech. Ctr. v. Lerma*, No. 95-1107-A, 1996 WL 633131 (E.D. Va. Oct. 4, 1996) (listing examples such as attempting to restrain a defendant from using material over which the plaintiff has no rights, distributing the copyright discriminatorily, and refusing to supply a list of copyrighted songs where requested). The underlying policy principles behind copyrights extend from the United States Constitution, with

the relevant policy here being to promote the "useful arts." *See Lasercomb*, 911 F.2d at 977 (quoting U. S. Const., Art. I, § 8, cl. 8)). If Plaintiff's purpose in copyrighting the Copyrighted Work was to license it for use when individuals or companies need a photo of the Harrah's lobby, then Plaintiff is likely not misusing his copyrights. Yet, a reasonable jury *could* find Plaintiff is using copyrights to derive an income from infringement suits and this issue is one of fact that the Court should not decide. Surely there are only minimal facts alleged to support this theory but, given that the Court is to construe the facts in favor of Defendants, the Court finds that summary judgment is not appropriate as to this affirmative defense.

### d. Defendants' De Minimis Use, Implied License, and Failure to Mitigate Affirmative Defenses

As to the other defenses upon which Plaintiff seeks summary judgment—de minimis use, implied license, and failure to mitigate—Defendants have made no effort to dispute that Plaintiff is entitled to summary judgment except for claiming they are unable to respond due to incomplete discovery. While Defendants claim they intend to file motions to compel answers and other discovery, they never did so and the close of discovery long ago passed. As noted previously, where a party fails to properly support an assertion of fact, it may be considered undisputed. Fed. R. Civ. P. 56(e)(2). Defendants have raised these affirmative defenses without providing any supporting facts and have failed to offer any theory whatsoever about why the Court should not grant summary judgment upon these matters. The Court finds that, because Defendants failed to provide evidence supporting these affirmative defenses, or even explain what evidence *could* support these affirmative defenses, Plaintiff is entitled to summary judgment as to these three affirmative defenses.

## IV. ORDER

For the aforementioned reasons, the Court finds that Plaintiff's Motion for Summary Judgment should be **GRANTED IN PART**.

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's Motion for Summary Judgment as to Defendant ACL's liability for direct copyright infringement is **GRANTED**;

2. Plaintiff's Motion for Summary Judgment as to Defendant Moore's liability for direct copyright infringement is **GRANTED**;

3. Plaintiff's Motion for Summary Judgment as to the affirmative defenses of de minimis use, implied license, and failure to mitigate is **GRANTED**; and

4. Plaintiff's Motion for Summary Judgment as to Defendants' affirmative defenses of fair use and unclean hands is **DENIED**.

**SO ORDERED**.

Signed: December 2, 2020

Graham C. Mullen
United States District Judge