# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | | |
|---|---|---|
| DAVID OPPENHEIMER, | § | |
|     Plaintiff, | § | CA No. 3:19-CV-00024 |
| | § | |
| v. | § | |
| | § | |
| WILLIAM STACEY MOORE, | § | |
| *and* THE ACL LLC, | § | |
|     Defendants. | § | JURY DEMANDED |

## PLAINTIFF'S TRIAL BRIEF, STATEMENT OF ISSUES REMAINING FOR TRIAL, REQUEST FOR *VOIR DIRE*, AND WITNESS LIST

**PLAINTIFF:**

Plaintiff, David Oppenheimer, is represented by:

Dana LeJune
LeJune Law Firm
2402 Fountainview Drive,
Suite 312 PMB 2361
Houston, Texas 77057-4808
Ph: 713-942-9898
Fx: 713-942-9898
dlejune@triallawyers.net
scott@triallawyers.net

**DEFENDANTS:**

Defendants William Stacey Moore and The ACL, LLC are represented by:

David M. Wilkerson
The Van Winkle Law Firm
11 North Market Street
Asheville, NC 28801
Ph: 828.258.2991
Fx: 828.257.2767
dwilkerson@vwlawfirm.com

Plaintiff, David Oppenheimer ("Oppenheimer" or "Plaintiff") [1] through his counsel, and pursuant to the Court's Order (ECF No. 54), conferred with Defendants' counsel to discuss the possibility of settlement, the authenticity of exhibits, and the issues remaining for the jury. Oppenheimer has also made pretrial disclosures pursuant to Fed. R. Civ. P. 26(a)(3). Pursuant to the Court's order, Oppenheimer submits the following Trial Brief, Statement of Issues remaining for Trial, Request for *voir dire*, and Witness Lists:

## PLAINTIFF'S PRETRIAL BRIEF

This is a copyright infringement case brought by Plaintiff, David Oppenheimer ("Oppenheimer" or "Plaintiff"), a professional photographer, against the Defendants, William Stacey Moore ("Moore") and The ACL LLC ("ACL") (collectively, "Defendants").

Oppenheimer is a professional photographer and has been making a living for over 15 years creating original and beautiful photographs, and licensing their use to businesses, non-profit organizations, and individuals for reasonable license fees. **See ECF No. 14-2, p. 1.** Mr. Oppenheimer also sells photographic prints and photography-based merchandise. **Id.** Almost all of the photographs in his portfolio – which are displayed and offered for

---

[1] Originally, Plaintiff intended to submit the Trial Brief and Statement of Issues jointly with Defendants – as such was Plaintiff's understanding of the Court's Order. However, after conferring with Defendants' counsel on this matter, the parties agreed that the parties' differing points of view regarding these issues required separate filings. Therefore, Plaintiff submits this document separate and apart from Defendants.

Page 2 of 14

Case 3:19-cv-00024-GCM   Document 61   Filed 10/14/22   Page 2 of 14

license on the website www.performanceimpressions.com – are Oppenheimer's original creations. **Id**. As germane to the instant suit, Oppenheimer is the author of, and at all times relevant to this claim, has been and is now the sole owner and proprietor of all rights, titles, and interests in and to the copyrights in the original photograph at issue in this case (the "Copyrighted Work").[2]

The Copyrighted Work is a wide-angle shot that frames the event center lobby of Harrah's Cherokee Casino Resort, brilliantly capturing the iridescent blue glow in which the room is bathed. **See ECF No. 1-1**. In February of 2014 just after its creation, Oppenheimer registered the Copyrighted Work with the U.S. Copyright Office under the title "Photos of Harrah's Cherokee Casino Resort by David Oppenheimer," bearing certificate number VAu 1-160-615. **See ECF No. 1-2.**

Defendant ACL is a limited liability company organized under the laws of the State of North Carolina and operates the website iplaycornhole.com. **ECF No. 1, ¶ 5** and **ECF No. 14-2, p. 10 [Deposition Transcript of Moore, p. 30 ln. 8-9]**. Defendant Moore is the founder, sole owner, and managing principal of ACL. ECF No. 1, ¶ 4.[3] Defendants advertised and promoted their event titled "2016 Championship of Bags" held at Harrah's Cherokee Casino Resort on the website iplaycornhole.com. **See ECF No. 14-2, p. 12**

---

[2] As opposed to having purchased the copyrights from the author…

[3] Moore is also involved in many other businesses, mostly involving managing other people's money… https://www.wraltechwire.com/2002/07/29/vc-profile-mentor-capital-goes-after-seed-investments/; https://www.bizjournals.com/charlotte/stories/2001/02/12/newscolumn3.html; and see: http://www.ankafunds.com/team/w-stacey-moore. **See ECF No. 14-2, pp. 33-43.**

**[Moore Transcript, p. 74, lns. 4-22].** Oppenheimer has never licensed the use of his Copyrighted Work to Defendants for any purpose. **ECF No. 1 at ¶¶ 11-160; and ECF No. 14-2, p. 2**.

On January 21, 2016, Oppenheimer first discovered that Defendants were infringing his copyrights by copying, uploading, and publishing his protected Copyrighted Work on their website, www.iplaycornhole.com. See **ECF No. 14-2, p. 2**. Defendants used Oppenheimer's Copyrighted Work for advertising, marketing, promoting, and selling entrance fees and/or tickets to their event "2016 Championship of Bags," which Defendants promoted which featured prizes totaling $50,000. See **ECF No. 1-3, and ECF No. 14-2, p. 12 [Moore Transcript, p. 74, lns. 4-22].**

Oppenheimer has presented documents showing Defendants' copying [ECF No. 1-3], and Defendant Moore has admitted that Defendant ACL published a copy of the Copyrighted Work on its website, www.iplaycornhole.com. **See ECF No. 14-2, p. 9-12 [Moore Transcript, p. 24, lns 18-20, and p. 74, lns. 4-22].** In their joint verified[4] responses to Oppenheimer's interrogatories, Defendants Moore and ACL wrote *"[w]hile the Defendant Moore does not specifically recall how or by whom the image was obtained, he concluded that he got it either from Harrahs or from Google Search. In either case, the image would have been originally uploaded to his IPAD."* See **ECF No. 14-2, p. 18 [Defendants' Verified Responses to Interrogatories, p. 5 of 8]**. Defendants also admitted

---

[4] Mr. Moore swore to the veracity of the answers to Oppenheimer's Interrogatories on his own behalf, and as "Managing Member of The ACL LLC." **See ECF No. 14-2, p. 21 [Defendants' Verified Responses to Interrogatories, p. 8 of 8].**

that *"the image was posted on the website around November 18, 2015 and removed from the website at least by December, 2016."* **Id. at p. 15.** Defendants further admitted that Defendant ACL *"ran the web site iplaycornhold.com where Mr. Oppenheimer's photographs was used"* and that Defendant Moore, ***individually***, was responsible for managing the website. **See ECF No. 14-2, p. 11 [Moore Transcript, p. 36, ln. 25 – p. 37, lns 1-15].**

For many years, it has been Oppenheimer's custom and business practice to try to protect his intellectual property by identifying himself and providing contact information on and in his photographs when they are first published. **ECF No. 1 at ¶ 10 and ECF No. 14-2, p. 2**. Oppenheimer's Copyrighted Work, as first published, prominently displayed his copyright management information ("CMI") in the caption and with a facial watermark, as well as embedded within the metadata of the Work. Therefore, Defendants were on notice that the Copyrighted Work was protected by copyright and could not be used without a license. **ECF No. 1 at ¶ 10 and ECF No. 14-2, p. 2**. Therefore, Defendants saw or *should have seen* Oppenheimer's CMI on the face of the Work when it was downloaded, and then when it was uploaded to Defendants' website, and for the 13 months it was being distributed on the World Wide Web to advertise Cornhole competition events.

Defendants did not purchase a license, obtain authorization, or in any way compensate Oppenheimer for their infringing uses of the Copyrighted Work. **ECF No. 14-2, p. 2**. As such, Oppenheimer put Defendants on notice of their infringing activities, tried to obtain information about the nature and extent of the infringing activities, asserted a

Page 5 of 14

Case 3:19-cv-00024-GCM   Document 61   Filed 10/14/22   Page 5 of 14

claim, tried to settle the matter without litigation, but eventually had to sue Defendants for their violations of the Copyright Act, and to discover the nature and extent of their infringements. **See ECF No. 1**.

Defendants' activities constitute copyright infringement. Owners of copyrights have the exclusive rights to publicly display copies of their copyrighted works. 17 U.S.C. § 106(5). "To display a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process." *Id.* § 101. And to publicly display a work is "to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times." *Id.* Federal law gives copyright owners a cause of action to use against copyright infringers. *Id.* § 501.

On March 23, 2020, Oppenheimer filed its Motion for Summary Judgment on several issues – including Defendants' liability for direct copyright infringement. **See ECF No. 13**. Defendants filed its Memorandum in Opposition to Oppenheimer's Motion on May 6, 2020. See **ECF No. 16**. On December 2, 2020, the Court issued its Order on Oppenheimer's Motion, finding that Oppenheimer owns valid copyrights in the Copyrighted Work and that both Defendant ACL and Defendant Moore directly infringed the Copyrighted Work when they copied and published the Work on their website. **See**

**ECF No. 20, pp. 3-7**. Therefore, there is no genuine issue for the jury to decide on the matter of infringement.

The Court also dismissed three (3) of Defendants' affirmative defenses: (1) *de minimis* use, (2) implied license, and (3) failure to mitigate damages. See ECF No. 20, p. 11. Therefore, there is no genuine issue for the jury to decide on these three (3) defenses.

Although the Court granted Oppenheimer's Motion for Summary Judgment on the issues of direct copyright infringement and three (3) of Defendants' affirmative defenses, the Court denied Oppenheimer's Motion on two (2) of Defendants' affirmative defenses: (1) fair use and (2) unclean hands. See ECF No. 20, pp. 8-11.

As to fair use, although the Court found that three (3) of the four (4) fair use factors[5] favored Oppenheimer – and the Court acknowledged that the "factors are to be examined as a whole and no single factor is determinative"[6] – because there exists some (albeit negligible) issue of material fact as to the fourth factor (effect of use upon the potential market or value of the Copyrighted Work), the Court determined that summary judgment is inappropriate for this affirmative defense. See ECF No. 20, p. 10.

Similarly, for the defense of unclean hands, the Court found that Defendants alleged minimal facts to support a theory that Oppenheimer may be using his copyrights in the Work exclusively to derive income from infringement lawsuits, and therefore there exists some (again, negligible) issue of material fact for the jury to decide. See ECF No. 20, p.

---

[5] (1) the purpose and character of Defendants' use, (2) the nature of the Copyrighted Work, and (3) the amount and substantiality of the portion of the Copyrighted Work used.
[6] See **ECF No. 20, p. 9.**

11. However, because Defendants did not use the minimal evidence of Oppenheimer's litigation history in support of its unclean hands defense (but instead used it in support of its argument of fair use), the issue was not fully briefed by either party. It is therefore incumbent on Oppenheimer to bring to this Honorable Court's attention that the law does not typically grant a defendant the right to introduce evidence of past lawsuits in support of an unclean hands affirmative defense.

The doctrine of copyright misuse prohibits a copyright holder from using a copyright "to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which is contrary to public policy to grant." *Alcaltel USA, Inc. v. DGI Techs, Inc.*, 166 F.3d 772, 792 (5th Cir. 1999)(quoting *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990)(quoting *Morton Salt Co. v. G.S. Suppiger*, 314 U.S. 488, 492, 62 S. Ct. 402, 86 L. Ed. 363, 1942 Dec. Comm'r Pat. 733 (1942))). At its core, copyright law seeks "to promote the dissemination of creative expression and provide incentives for copyright owners to produce … original works." *CBS Broad, Inc. v. EchoStar Communications Corp.*, 265 F.3d 1193, 1211 (11th Cir. 2001). However, these goals are undermined when a copyright holder attempts to go beyond the rights granted by the law ***to stifle the creativity of other authors.*** See *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (emphasis added). Courts across the country have consistently held that filing multiple suits does not mean that a plaintiff has engaged in copyright misuse. In *Energy Intell. Group, Inc. v. CHS McPherson Refinery, Inc.*, 300 F.Supp. 3d 1356 (D. Kan. 2018), just as the Defendants suggest here, the *Refinery* defendant argued

that the plaintiff "engaged in abuse of process through its actions of ***filing multiple copyright infringement lawsuits against its clients,*** paying its employees bonuses for finding and reporting potential copyright infringement claims, engaging in efforts to 'entrap' its largest clients into admitting that they are engaging in copyright infringement, and by pushing the Refinery into purchasing a costly Global Enterprise License to avoid this lawsuit." *Id*. at 1373. The district court found none of these facts or arguments persuasive; holding that that the *Refinery* defendant "failed to come forward with any evidence that EIG misused its copyrights." *Id*. at 1374. Similarly, in *Malibu Media, LLC v. Does*, 2014 U.S. Dist. LEXIS 77929, 2014 WL 2581168, at *2 (N.D. Ill. 2014), when the defendant offered the existence of multiple similar copyright infringement lawsuits in support of a copyright misuse defense, the court stated "[i]t is certainly true that [the plaintiff] has filed a very large number of infringement suits in this district and in others. ***But that is what the holders of intellectual property rights do when they are faced with mass infringement***." *Id.* **[7]**

Therefore, this trial should properly focus on a determination of an appropriate amount of statutory damages which is commensurate with the facts surrounding Defendants' infringing activities.

Under Title 17, copyright owners can seek injunctive relief, monetary damages (in the form of actual damages, Defendants' profits attributable, or statutory damages), and

---

**[7]** The topic of unclean hands – as well as any attempt by Defendants to introduce evidence of Oppenheimer's litigation history – will be the subject of a motion *in limine* that will argue, among other things, that Rule 403 should prevent introduction of such evidence.

reimbursement of attorney fees in copyright-infringement cases. 17 U.S.C. §§ 502, 504, and 505. Under Title 17, Oppenheimer may recover his actual damages due to Defendants' infringing activities, as well as the profits of the infringers attributable to their infringing activities. 17 U.S.C § 504(b). Here, Oppenheimer's actual damages are his lost licensing revenue, as well as the dilution of the market value of the work.

Like a large percentage of commercial photographers, Oppenheimer uses a software pricing program known as fotoQuote to determine a range of license fees for his stock photography. This program uses an updated database of the prevailing market prices for particular uses of stock photographs, taking into account factors such as the type of use (advertising, editorial, internal corporate, website, etc.), the size of the reproduced image, whether the reproduced image will be in color, the nature of the rights granted (one-time use, multiple uses for a specified period, paid-up license, etc.), the estimated circulation or number of copies to be made, and the geographic market where the use will be made. This software is standard in the industry for pricing stock photography licenses; i.e., commercial photographers.

Oppenheimer used fotoQuote to calculate what he would have charged Defendants for their use of his Copyrighted on their website for known time period, had they purchased a license rather than pirating his work. The fotoQuote suggested license of $4,785.00.

Additionally, because Defendants did not seek permission before using his work, it is customary in the industry to charge a multiplier of the "standard" price. The logic behind this is simple: it costs more to purchase a license after one has been pirating an image, as

opposed to purchasing a license in advance. Based on this fact, courts have recognized that a 5x multiplier of the standard license fee is an appropriate measure of actual damages in photographic copyright cases. See *Bruce v. Weekly World News, Inc.*, 150 F.Supp.2d 313 (D.Mass 2001), *aff'd* 310 F.3d 25 (1st Circ. 2002).[8]

Alternatively, Oppenheimer may recover statutory damages pursuant to 17 U.S.C. § 504(c). Title 17 authorizes a range of damages from $750 to $30,000 for each work infringed "as the court considers just," and to increase the per-work-infringed award to $150,000, "in its discretion," for willful infringements.

## ISSUES REMAINING FOR TRIAL

The parties have conferred and discussed the remaining issues for trial upon which they have not agreed. While the parties agreed that the issue of fair use and reasonable damages are both issues that must be resolved by the jury, the parties disagreed as to Defendants' affirmative defense of copyright misuse (or what they are calling "unclean hands"). Oppenheimer takes the position that Defendants failed to produce valid evidence supporting such a claim. Additionally, and while the parties agree that the issue of willful infringement is an issue to be determined by the jury, the parties disagree as to the manner in which the issue should be presented to the jury for determination. Defendants propose that the issue of willful infringement should be submitted to the jury as a separate interrogatory question. Plaintiff believes that such a granular question is improper and that

---

[8] Thus, in this case, using the multiplier results in a post-infringement, post suit license $23,925.00.

Page 11 of 14

Case 3:19-cv-00024-GCM Document 61 Filed 10/14/22 Page 11 of 14

the issue of Defendants' willfulness should be determined along with the jury's deliberation of statutory damages. To do otherwise is an inferential rebuttal question, that may suggest to the jury that the Court is providing the Defendants "two bites of the same apple," and believes that the answer to a separate willfulness question ought to be "no." Finally, such a multiple inquiry violates the judiciary's decades-long move *away* from such granular submissions.

Therefore, it is Oppenheimer's position that the only remaining issues for the jury on this matter concern, (1) whether Defendants' unauthorized use of the Copyrighted Work constitutes fair use, and (2) reasonable damages commensurate with Defendants' infringing use (which will include the jury determining whether Defendants' unauthorized use was willful).

## PLAINTIFF'S REQUEST FOR VOIR DIRE QUESTIONS

Plaintiff's Request for *Voir Dire* Questions are attached hereto.

## PLAINTIFF'S WITNESS LIST

Plaintiff intends to call the following individuals to testify at trial:

1. David Oppenheimer, Plaintiff
2. William Stacey Moore
3. Sean Szarkowicz, by cross examination

# JOINT PROPOSED JURY INSTRUCTIONS AND INTERROGATORIES

The Parties' Joint Proposed Jury Instructions and Interrogatories are attached hereto.

Dated: October 14, 2022.

                Respectfully submitted,

                LEJUNE LAW FIRM

By:   *s/Dana A. LeJune*
       Dana A. LeJune
       email: dlejune@triallawyers.net
       2402 Fountainview Drive,
       Suite 312 PMB 2361
       Houston, Texas 77057-4808
       713/942.9898 Telephone
       713/942.9899 Facsimile

       **NORTH CAROLINA OFFICE:**

       7 Orchard Street
       Suite 200
       Asheville, NC 28801
       828-774-5800
       WWW.TRIALLAWYERS.NET
       WWW.COPYRIGHTSUIT.NET

# CERTIFICATE OF SERVICE

I hereby certify that on this the 14th day of October, 2022, I forwarded the foregoing instrument to all opposing parties:

David M. Wilkerson
The Van Winkle Law Firm
11 North Market Street
Asheville, NC 28801
(828) 258-2991
dwilkerson@vwlawfirm.com

*s/Dana A. LeJune*
Dana A. LeJune